UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KITTIE BUTCHER,

       Plaintiff,

                                              File No.  1:05-CV-382

v.

                                              HON. ROBERT HOLMES BELL

INGHAM COUNTY HEALTH
DEPARTMENT, and KEN
SPERBER, individually,

       Defendants.
                                            /

**O P I N I O N**

This First Amendment retaliation and tortious interference with contract case is before the Court on Defendants' motion for summary judgment.  The limited issue before this Court is whether Plaintiff's speech concerned matters of public concern deserving of protection under the First Amendment.  For the reasons that follow, Defendants' motion for summary judgment will be granted.

**I.**

Defendant Ingham County Health Department's Office of Young Children ("OYC") is a child care resource and referral agency. OYC receives funding from a variety of sources, including state and municipal sources and contracts with private organizations.  One of those funding sources came through Ingham County's agreement with the Michigan Community Coordinated Child Care Association ("MI 4C") to provide services outlined in the Childcare

Resource and Referral Agreement between MI 4C and the UAW-GM National Center for Human Resources.

Plaintiff Kitty Butcher was hired by the OYC in 1996 as a daycare specialist. Her supervisor was Defendant Ken Sperber, Director of the OYC. Butcher was assigned by the OYC to be a childcare resource and referral consultant for UAW/GM employees and families at GM plants or training centers or at the UAW local Union Hall. Butcher and the other UAW/GM work team members were also required to work at the OYC office performing non-UAW/GM related functions for at least eight hours per week.

In 1997 local UAW committee members asked Butcher why she and her colleagues were not working 40 hours per week for the UAW. (Butcher Dep. at 4-5). Throughout 1997 Butcher repeatedly spoke out to Sperber about how the UAW contract was being implemented and about what she believed to be a misuse of her time on non-UAW referrals. (Butcher Dep. at 44). Butcher did not think it was appropriate for her to do care finder shifts where she was required to do general intakes and to do child care referrals covered by other contracts. (Butcher dep. at 26, 38, 45). Butcher believed that she was being paid for all of her time by the UAW, so she should not have been working on other contracts that were paying for those services separately. (Butcher Dep. at 27). Butcher's relationship with Sperber degraded after she made her concerns about the UAW carefinder shift issue known to him. (Butcher Dep. at 73). Although Butcher alleges in her complaint that she spoke to Sperber about what she believed to be a violation of the UAW contract, Butcher testified that

2

she did not use the word violation. Butcher's complaint was with the manner in which the UAW contract was being implemented because she did not feel that the County was honoring the spirit and letter of the contract with the UAW. (Butcher Dep. at 31-32, 44-45). In 1998 UAW personnel met with Sperber. Shortly thereafter Sperber stopped requiring the UAW/GM workers to do the care finder shifts at OYC.

The only allegedly protected speech addressed in Butcher's complaint concerned her speech concerning the UAW/GM contract. However, in response to Defendants' motion for summary judgment Butcher has attached a proposed amended complaint that adds an additional statement that she claims raised a matter of public concern. Butcher alleges that she "complained regarding ethical issues and concerns relating to the manner in which Mr. Sperber was billing for training services." (Proposed Am. Compl. ¶ 20). Although Butcher has not been granted leave to file an amended complaint, the subject matter of the training funds was addressed during discovery. Accordingly, for purposes of this motion, the Court will assume that the second statement is also a part of this suit. The duties of the OYC daycare providers included training child care providers in the community. (Butcher Dep. at 64). In 2000 Butcher spoke to Bob Glandon, Sperber's supervisor, about Sperber misusing funds or double dipping in relationship to training money. (Butcher Dep. at 45; 63-64, 75-76, 95-96). She testified that OYC was receiving funding from two sources to train the same people. (Butcher Dep. at 95-96).

In November 2001 Butcher obtained a lateral transfer to the Department of Public Health-Nursing, where she worked for the grant funded ACTS Program and was no longer under the supervision of Sperber. The grant ended in June 2004. Butcher accepted a transfer in lieu of layoff and returned to the OYC to work under the supervision of Sperber. (Compl. ¶ 26). Butcher alleges that Sperber changed Butcher's job title so that she would be deemed a "trial" employee. (Compl. ¶ 29). Sperber placed Butcher on layoff status in August 2004, at the end of her trial period, for failure to satisfactorily perform the duties of the OYC Early Childhood Consultant during her trial period. (Def. Ex. 7).

Butcher sued the Ingham County Health Department and Ken Sperber alleging First Amendment retaliation and tortious interference with contractual relations. At the scheduling conference the parties agreed to engage in limited discovery regarding the nature of the speech alleged to be the basis of Butcher's § 1983 claim and whether it was constitutionally protected. Defendants have now moved for summary judgment on the First Amendment issue. They contend that Plaintiff's speech to Sperber in 1996 regarding "contract violations" and her speech to Glandon in 2000 about double-dipping in relation to training moneys does not constitute protected speech.

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must

4

look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

"On summary judgment, all reasonable inferences drawn from the evidence must be viewed in the light most favorable to the parties opposing the motion." *Hanover Ins. Co. v. American Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994) (citing *Matsushita*, 475 U.S. at 586-88). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id. See generally, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

Butcher claims she was terminated in retaliation for statements she made that were protected under the First Amendment.

In order to establish a case of retaliation for speech protected under the First Amendment, a plaintiff must point to evidence sufficient to establish three elements: 1) that she engaged in constitutionally protected speech; 2) that she was subjected to adverse action

or was deprived of some benefit, and 3) that the protected speech was a "substantial" or a "motivating factor" in the adverse action. *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 897 (6th Cir. 2001) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Whether the employee engaged in constitutionally protected speech is an issue of law for the court to decide. *Farhat v. Jopke*, 370 F.3d 580 (6th Cir.2004) (citing *Leary v. Daeschner*, 349 F.3d 888, 898 (6th Cir.2003)); *Bonnell v. Lorenzo*, 241 F.3d 800, 809-10 (6th Cir. 2001). The determination involves a two-step inquiry. First, the court must determine whether the employee's speech addresses a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 147-50 (1983). If it does, then the court must determine whether the employee's interest in commenting on matters of public concern outweigh the employer's interest in providing effective and efficient services. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Latham v. Office of the AG*, 395 F.3d 261, 264-65 (6th Cir. 2005) (citing *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995)). *See also Bd. of County Com'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 675 (1996) (" even termination because of protected speech may be justified when legitimate countervailing government interests are sufficiently strong."). The employee bears the burden of proving that his or her actions were constitutionally protected in the particular circumstances. *Brandenburg*, 253 F.3d at 897 (citing *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir.1999)).

The sole issue raised by Defendants' motion for summary judgment is whether Butcher's statements may fairly be characterized as constituting speech on a matter of public concern. (Docket # 7). In general, a matter of public concern is a "matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. Matters of public concern are "typically matters concerning government policies that are of interest to the public at large . . . ." *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004). *See also Latham*, 395 F.3d at 265 ("An expression addresses a matter of public concern where its subject matter is such that the public at large would have an important interest in the issue."). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. *See also Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village School Dist.*, 428 F.3d 223, 229 (6th Cir. 2005); *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 678 (6th Cir. 2001).

In general, speech involves matters of public concern when it involves "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Brandenburg*, 253 F.3d at 898 (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)).

It goes without saying that speech disclosing public corruption is a matter of public interest that deserves constitutional protection. *Solomon v. Royal Oak Twp.*, 842 F.2d 862, 865 (6th Cir. 1988). Indeed, "[p]ublic interest is near its zenith when ensuring that public

organizations are being operated in accordance with the law," when "expos[ing] graft and corruption," and when "seeing that public funds are not purloined" or wasted. *Chappel v. Montgomery County Fire Protection Dist. No. 1*, 131 F.3d 564, 576 (6th cir. 1997) (quoting *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir.1986)).

However, it is important to distinguish such matters of public concern from internal personnel disputes or complaints about an employer's performance. *Brandenburg*, 253 F.3d at 898. "Federal courts normally do not review personnel decisions reacting to an employee's behavior 'when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of only personal interest.'" *Jackson v. Leighton*, 168 F.3d 903, 909-10 (6th Cir. 1999) (quoting *Connick*, 461 U.S. at 147). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick*, 461 U.S. at 146.

Moreover, not every allegation of fraud or corruption against a public agency is a matter of public concern. In *Barnes v. McDowell*, 848 F.2d 725 (6th Cir. 1988), a public employee alleged that he had been terminated in retaliation for expressing his opinion that certain agency practices evidenced corruption and cronyism. 848 F.2d at 728. The Sixth Circuit upheld the granting of summary judgment in favor the defendants on the ground that none of the items the plaintiff identified as the cause of his dismissal addressed maters of

public concern. *Id.* at 734. While the court acknowledged that it is possible to view allegations that public monies are being spent unwisely or that a government program is being run inefficiently as implying that a public agency or official is corrupt, in order to survive a motion for summary judgment "a plaintiff must present concrete evidence to support the allegation." *Id.* at 734. Although the plaintiff in *Barnes* may have had justifiable criticisms regarding the allocation of the agency budget and the agency's purchasing practices, he presented no evidence linking any of those charges to corruption in the agency. *Id.* at 734-35. "The mere fact that public monies and government efficiency are related to the subject of a public employee's speech do not, by themselves, qualify that speech as being addressed to a matter of public concern." *Id.* at 734. As noted in *Barnes*, concerns regarding public money and government efficiency could be raised in virtually any public employment matter. *Id.* In the absence of any evidence linking the agency's spending practices to corruption, the Sixth Circuit held that that "instead of having addressed a matter of public concern, [the plaintiff's] complaints appear to be nothing more than examples 'of the quintessential employee beef: management has acted incompetently.'" *Id.* at 735 (quoting *Murray v. Gardner*, 741 F.2d 434, 438 (D.C. Cir. 1984)).

Against the background of *Connick* and subsequent cases the Sixth Circuit has distilled the "public concern" test. *Farhat*, 370 F.3d at 592. Under this test the court must determine: "the 'focus' of the speech; 'the point of the speech in question'; 'to what purpose the employee spoke'; 'the intent of the speech'; or 'the communicative purpose of the

speaker.'" *Id.* "As a corollary to this 'focus' test, we have held that the proper inquiry is not what might be 'incidentally conveyed' by the speech, and that 'passing' or 'fleeting' references to an arguably public matter do not elevate the speech to a matter of 'public concern' where the 'focus' or 'point' of the speech advances only a private interest." *Id.* at 592-93.

Here, Butcher contends that her comments to Sperber in 1997 regarding the UAW contract and her comments to Robert Glandon in 2000 regarding the allocation of training funds, addressed matters of public concern. Butcher contends that these communications concerned the misuse of funds and ethical issues regarding the reporting and billing of training monies. As such, she contends they fit squarely within the parameters of protected speech because they are clearly matters of public concern. (Pl. Resp. Br. at 14). The Court disagrees.

Butcher's complaints stemmed from her belief that she should have been working forty hours per week for the UAW. (Butcher Dep. at 14-15). Butcher, however, was not familiar with the terms of the contract and she was careful to stress that she never characterized her concerns as a matter of contract violation. (Butcher Dep. at 31, 34-35). In support of her understanding of the contract requirements she has presented the affidavits of local UAW committee members, GM employees and former OYC employees. Committeeman Jim Dickman understood that the OYC employees assigned to the GM/UAW "were supposed to work exclusively on GM/UAW work." (Dickman Aff. ¶ 10). Former GM employee Robert Varner stated that it would be "improper for employees that were hired

10

under the GM/UAW contract with the OYC to work on behalf of clients that were not related to the GM/UAW project." (Varner Aff. ¶ 16). Former GM employee Mary Quintieri, understood that "it would not have been appropriate for Ms. Butcher to go to the OYC general office and work on other grants or funds which were not GM/UAW oriented." (Quintieri Aff. ¶ 12). Former OYC employee Judy Goth Owens was "concerned" that Sperber's practice of requiring the employees who worked on the UAW/GM contract to work on other projects funded by other entities may have been improper. (Owens Aff. ¶ 29). Former OYC employee Ellen DeRosia had an "understanding that employees working on the UAW/GM contract were supposed to do work for UAW/GM members full-time." (DeRosia Aff. ¶ 17).

None of these affidavits identifies the source of the affiant's knowledge. None of these individuals was a signatory to the contract. The local UAW personnel had no responsibility or authority with respect to the contract. (Def. Ex. 4). Even Butcher acknowledged that neither she nor the complaining local UAW committee members had a copy of the contract or were familiar with the specific terms of the contract. (Butcher Dep. at 36). Because the statements in the affidavits regarding the contract requirements are not based on first-hand knowledge, they are not competent to raise an issue of fact as to the requirements of the contract.

Moreover, this evidence is unequivocally contradicted by the plain language of the contract. Contrary to Butcher's assumptions, the UAW contract did not call for Butcher, or

11

for any other specific county employee, to provide the contracted for services. The contract merely called for the furnishing of "program consultants." Neither did the contract require that Butcher, or any of the other program consultants, personally be on-site at a UAW/GM site for 40 hours a week or work 40 hours per week for UAW/GM. The contract merely called for the program consultants to be on site "an average of 20 hours per week." (Def. Ex. 2).

There is no question that Butcher's complaints regarding the time she was assigned to the OYC office to do care finder shifts arose from her misunderstanding of OYC's relationship with the UAW. Notably, there is no evidence in the record that any of the signatories to the contract between UAW/GM and MI 4C or the contract between MI 4C and Ingham County had any objection to the manner in which the contract was being implemented. Under the contract, it was Ingham County's prerogative to make assignments to the UAW/GM contract. Butcher may not have agreed with those assignments, but that is a personal issue, not a public concern.

Moreover, Butcher's subjective belief that she should have worked full time at UAW is not evidence of a misuse of **public** funds. Butcher was a county employee. She was paid with county funds. However, her complaint was not that **public** funds were being spent improperly, but that **private** funds from UAW/GM were being spent improperly. She was concerned that UAW was not getting its benefit of the bargain, not that the taxpayers were being shortchanged.

Butcher also contends that she had an ethical concern with Sperber's practice of billing more than one funding source for training services provided by OYC. She has not alleged that the training was billed in violation of the law or even in violation of the terms of any contract or grant. Neither has she presented any evidence that any funding source ever received less training than that for which it contracted and paid.

As noted in *Barnes*, it is possible to view allegations that public monies are being spent unwisely and that a government program is being run inefficiently as implying that a public agency is corrupt. 848 F.2d at 734. However, although such general allegations may be sufficient to satisfy pleading requirements, they are not sufficient to defeat a properly supported motion for summary judgment. *Id.* Although the evidence need not be conclusive on the issues presented in the litigation, it must sufficiently indicate the existence of facts which are disputed by the parties and which are material to the litigation to defeat the defendant's motion. *Id.*

Butcher has come forward with no evidence of public corruption, fraudulent conduct, misuse of public funds, political patronage, or even contract violation. Her speech did not involve "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Farhat*, 370 F.3d at 590. Butcher's speech did not address any "actual or potential wrongdoing or any breach of public trust." *See Brown v. City of Trenton*, 867 F.2d 318, 322 (6th Cir. 1989). Butcher may have thought it would have been better, wiser or more efficient for the OYC

13

employees assigned to the GM/UAW to focus exclusively on GM/UAW matters, or for the training to be billed differently.  However, those concerns are not public concerns.  "The mere fact that public monies and government efficiency are related to the subject of a public employee's speech do not, by themselves, qualify that speech as being addressed to a matter of public concern." *Barnes*, 848 F.2d at 734.  *See also Williams v. Commonwealth of Kentucky*, 24 F.3d 1526, 1535-36 (6th Cir. 1994) (noting that discussions about office policy and job duties may address matters of only private concern, but criticizing political patronage practices and reporting allegedly politically corrupt activities of employees addresses matters of public concern).

The primary "focus," "point," or "communicative purpose" of Butcher's statements is nothing more than a disagreement with Sperber's management style and supervisory practices.  Butcher's speech, like many personal employee grievances, appears to be motivated by self-interest and her dissatisfaction with her employer, the OYC, and Sperber in particular.  As such her statements amount to no more than the "quintessential employee beef" that management has acted incompetently. *Barnes*, 848 F.2d at 735.  Such statements do not involve matters of public concern.

Having concluded that Butcher's statements did not involve matters of public concern, the statements were not constitutionally protected, and no further inquiry is necessary.  The Court need not determine whether the county's interests outweighed her First Amendment interests or whether her speech motivated Defendants' adverse actions. *See Connick*, 461

U.S. at 146 ("if Myers' questionnaire cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for us to scrutinize the reasons for her discharge."); *Jackson*, 168 F.3d at 909-10 ("If the speech is not related to a matter of public concern, we do not evaluate the reasons for the decision."); *Barnes*, 848 F.2d at 733 ("If the plaintiff's speech did not address a matter of public concern, no further inquiry is necessary."). Defendants are accordingly entitled to summary judgment on Butcher's First Amendment retaliation claim.

## IV.

Butcher's remaining claim for tortious interference with contract is a state law claim. District courts have discretion to refuse to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ." *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 586 (6th Cir. 2005) (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir.1996)). Having disposed of the federal claim upon which this Court's jurisdiction is based, the Court is aware of no good reason for exercising supplemental jurisdiction over Butcher's tortious interference with contract claim. This claim will accordingly be dismissed without prejudice.

An order and judgment consistent with this opinion will be entered.

Date:     March 29, 2006              /s/ Robert Holmes Bell
                                       ROBERT HOLMES BELL
                                       CHIEF UNITED STATES DISTRICT JUDGE